IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


M.H.,[1]

          Plaintiff,

v.                                   Case No. 19-1214-JWB

ANDREW M. SAUL,
*Commissioner of Social Security,*

          Defendant.


**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits and supplemental security income. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 11, 12.)[2] The Commissioner's decision is REVERSED AND REMANDED for the reasons set forth herein.

### I. Standard of Review

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a

---

[1] Plaintiff's initials are used to protect privacy interests.
[2] Plaintiff did not file a reply brief and the time for doing so has now passed.

reasonable mind might accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 751. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational

factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

**II. Background and Procedural History**

Plaintiff applied for disability insurance and supplemental security income benefits on June 4, 2015. (Tr. at 12.) In her applications, Plaintiff alleged disability beginning August 23, 2013. Plaintiff later amended her alleged onset date to April 15, 2016. As of the onset date, Plaintiff was 50 years of age. (Tr. at 29.) Plaintiff's claims were administratively denied both initially and upon reconsideration, prompting her to request a hearing before an Administrative Law Judge (ALJ). A hearing was held in September 2017 and an unfavorable decision was issued in September 2018, after the ALJ received supplemental medical evidence. (Tr. at 12-31.) Plaintiff exhausted her administrative remedies and has now appealed to this court.

At step one, the ALJ found Plaintiff had been engaged in substantial gainful activity during certain periods, including various months during 2016 and 2017. The ALJ found that Plaintiff had not been engaged in substantial gainful activity during the remaining periods at issue. (Tr. at 15-16.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: mild degenerative changes, disc bulge at L5-S1, and mild bilateral neural foraminal narrowing of the lumbar spine; degenerative changes of the bilateral hips; diabetes mellitus type II, uncontrolled

with neuropathy; asthma; major neurocognitive disorder; and major depressive disorder. (Tr. at 16-17.) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations. (Tr. at 17-20.)

The ALJ next determined that Plaintiff has the RFC to perform light work, as defined in the regulations, with some physical limitations.[3] With respect to Plaintiff's mental RFC, the ALJ determined that Plaintiff can understand, remember and carry out simple instructions and can maintain concentration, persistence and pace for simple, routine and repetitive tasks that are not performed in a fast-paced production environment or as an integral part of a team. Plaintiff can also make simple work-related decisions, would do best with pre-determined work goals, and would be off task 15 percent of the workday. (Tr. at 20.)

In determining Plaintiff's RFC, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but Plaintiff's statements as to the intensity, persistence, and limiting effects of the symptoms were not fully supported based on the medical evidence discussed in the decision. (Tr. at 22.)

With respect to the mental health evaluations, Plaintiff was first evaluated in December 2015 by Melvin Berg, Ph.D. (Tr. at 24-25.) Dr. Berg noted that Plaintiff was physically uncomfortable during the evaluation due to back pain. Plaintiff was tearful during the evaluation and stated that she has felt depressed since 2013. Dr. Berg diagnosed Plaintiff with depressive disorder. During the evaluation, Plaintiff was asked to perform several tasks and she got overwhelmed and made several errors. Dr. Berg opined that Plaintiff has limitations in her ability

---

[3] Because Plaintiff's arguments regarding alleged error focus on her mental functional abilities, this opinion does not fully discuss all medical opinions considered by the ALJ and Plaintiff's physical limitations as they are not relevant to the issues before the court.

to attend to and process simple information. Dr. Berg opined that Plaintiff was very slow, made numerous errors, and was easily overwhelmed. (Tr. at 27; 700-02.)

In December 2017, Plaintiff underwent a psychological consultative examination with T.A. Moeller, Ph.D. During the evaluation, Plaintiff was tearful and dysphoric. Plaintiff was significantly depressed. After conducting cognitive testing, the results showed that she was in the significantly impaired range. When asked to do a three-point command, Plaintiff could only successfully complete one point. Dr. Moeller noted that Plaintiff was "experiencing impairment from some form of cognitive deterioration." (Tr. at 724.) Dr. Moeller diagnosed Plaintiff with major neurocognitive disorder, possible Alzheimer's, and major depressive disorder. Dr. Moeller opined that Plaintiff had mild limitations in her ability to understand, remember, and carry out simple instructions, and that she could complete some simple one and two step instructions. Dr. Moeller further opined that Plaintiff had significant difficulties understanding and remembering instructions and that Plaintiff could not concentrate on tasks that require a degree of focus. (Tr. at 25-28; 719-28.)

The ALJ gave partial weight to the opinions of Dr. Berg and Dr. Moeller. The ALJ stated that Plaintiff had successfully performed gainful activity at times and, although she was slightly slower than other employees, she could complete her job duties. With respect to her previous employment at McDonald's, her employer noted that she worked at 70 percent productivity of the other employees. The ALJ noted that Plaintiff's mental conditions have been accommodated by finding that she would be off task for up to 15 percent of the workday. (Tr. at 28.)

Two state agency psychiatric consultants completed assessments after reviewing the record. Mark Altoman, Ph.D., opined that Plaintiff's mental impairments resulted in no more than mild limitations. On reconsideration, M. Rosalie McMaster, Ph.D., also reviewed the record and

offered opinions. Dr. McMaster reviewed the record and opined that Plaintiff was limited to

understanding, remembering, and carrying out one to two step instructions. (Tr. at 153-54.) The

ALJ discussed the opinions as follows:

> Dr. McMaster further opined that the claimant retains the ability to understand,
> remember, and carry out one and two-step instructions, and that she would do best
> in jobs where she has predetermined work goals, occasional interactions with the
> general public, and frequent interactions with co-workers and supervisors. While
> these assessments [Dr. Altoman and Dr. McMaster] are well supported with
> explanation, the undersigned has given them little weight based on consultative
> psychological examination findings, which support greater limitations, as discussed
> above.

(Tr. at 28-29.)

At step four, the ALJ found that Plaintiff was not able to perform past relevant work. (Tr.

at 29.) At step five, the ALJ found that given Plaintiff's age, education, work experience, and

RFC, there were jobs in the national economy in significant numbers that she could perform. (Tr.

at 30.) The ALJ sought the opinion of a vocational expert to determine what jobs Plaintiff could

perform. The vocational expert testified that Plaintiff would be able to perform the following

positions: inserting machine operator (DOT 208.685-018); injection mold machine tender (DOT

556.685-038); and wire wrapping machine operator (DOT 726.682-014). (Tr. at 30.)

Plaintiff argues that the ALJ erred in formulating the RFC by not including certain

limitations and by failing to make a fair assessment of Plaintiff's allegations regarding her

limitations.

### III. Analysis

Plaintiff contends that the ALJ failed to properly evaluate her mental limitations when

formulating the RFC. Plaintiff argues that the ALJ erred by failing to include the limitation that

Plaintiff was limited to understanding, remembering, and carrying out one to two step instructions

(referred to throughout this order as "one to two step limitation"). (Doc. 11 at 11-13.) The

Commissioner argues that the ALJ erred in her description of her treatment of Dr. McMaster's opinions but that the error was harmless because the ALJ largely adopted Dr. McMaster's opinions and the RFC accounted for the one to two step limitation.  (Doc. 12 at 8-10.)

Dr. McMaster opined that Plaintiff retained the ability to understand, remember, and carry out one to two step instructions.  The one to two step limitation was not included in the RFC.  Dr. McMaster also opined that Plaintiff would do best in jobs with predetermined work goals, occasional interactions with the public and frequent interactions with co-workers and supervisors.  These limitations are included in the RFC.  In discussing Dr. McMaster's opinion, the ALJ stated that she gave little weight to the opinion, even though the ALJ found the opinion to be well supported, because Dr. Moeller and Dr. Berg's findings supported greater limitations.

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence."  SSR 96-8p, 1996 WL 374184 at *7.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  *Id.* Also, the ALJ cannot "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted).

Reviewing the opinion, the ALJ clearly adopted all of Dr. McMaster's opinions except the one to two step limitation.  The ALJ stated that the opinion was given limited weight because Plaintiff had more significant limitations as set forth by Dr. Berg and Dr. Moeller.  However, the Commissioner does not assert that the limitations in the RFC are more restrictive than Dr. McMaster's one to two step limitation.  Dr. Berg opined that Plaintiff had limitations in her ability to attend to and process simple information and that her capacity to perform unskilled tasks was

7

limited. Dr. Moeller opined that Plaintiff "could complete **some** simple one and two step instructions" and "has significant difficulties understanding and remembering instructions." (Tr. at 28) (emphasis supplied). Clearly, Dr. McMaster's opinion is not as limiting as the opinions of Dr. Moeller (Plaintiff can do **some** simple one and two step instructions but has significant difficulties remembering instructions) and Dr. Berg (Plaintiff cannot even perform unskilled tasks). As Plaintiff argues, this would indicate that the ALJ has found Plaintiff to be more limited than opined by Dr. McMaster or, at the most, Plaintiff is only able to complete one to two step instructions.

The Commissioner argues that the ALJ's statement regarding his reason for giving little weight to Dr. McMaster's opinion was erroneous. The Commissioner contends that this error was harmless because the limitations in the RFC largely align with Dr. McMaster's opinion. (Doc. 12 at 8.) The Commissioner further asserts that the limitation that Plaintiff is limited to simple, routine, and repetitive tasks adequately accounts for Dr. McMaster's opinion regarding the one to two step limitation.

The Commissioner, however, does not cite any authority for the proposition that the one to two step limitation is encompassed by the limitation to simple, routine, and repetitive tasks. The Commissioner further asserts that a limitation to simple, repetitive tasks is congruent with the definition of unskilled work; essentially arguing that because unskilled work is the simplest type of work possible, it would account for the one to two step limitation. (Doc. 12 at 8.) The regulation defining unskilled work, however, does not include a one to two step limitation. *See* 20 C.F.R. § 404.1568(a); *see also* Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *9 (discussing unskilled work). Moreover, when reviewing the assessment, Dr. McMaster has clearly added this limitation in narrative form under the sections discussing understanding, memory, concentration,

and persistence limitations. (Tr. at 170-71.) This would indicate that this limitation is an addition to Dr. McMaster's opinions regarding Plaintiff's ability to carry out simple instructions and simple work-related decisions. (Tr. at 170-71.) The Tenth Circuit has also indicated that "moderate mental impairments may decrease a claimant's ability to perform even simple work." *Coleman v. Astrue*, No. 09-1338-SAC, 2010 WL 4942103, at \*7 (D. Kan. Nov. 30, 2010) (citing *Bowers v. Astrue*, 271 Fed. Appx. 731, 732 (10th Cir. March 26, 2008)). A description of simple and unskilled work may not adequately incorporate more specific limitations such as the limitation here. *Id.*

The ALJ's decision to give Dr. McMaster's opinion little weight is not supported by the reason stated in the decision. Rather, the stated reasons suggest the RFC should have been more restrictive than that proposed by Dr. McMaster when, in fact, the RFC ends up being less restrictive. Moreover, the ALJ clearly adopted the other opinions of Dr. McMaster, but failed to adequately explain why she did not adopt the one to two step limitation. *See Haga*, 482 F.3d at 1208. Therefore, the ALJ erred in weighing Dr. McMaster's opinion. And viewing the jobs identified by the vocational expert, the court finds that the ALJ's error was not harmless.

As pointed out by Plaintiff, all positions identified by the vocational expert require a GED reasoning level of either 2 or 3. The Dictionary of Occupational Titles ("DOT") defines a reasoning level of 2 as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT 208.685-018, inserting machine operator, 1991 WL 671755. A reasoning level of 3 requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems

9

involving several concrete variables in or from standardized situations."[4] DOT 726.682-014, wire

wrapping machine operator, 1991 WL 679591. Notably, a reasoning level of 1 only requires the

ability to apply "commonsense understanding to carry out simple one- to two-step instructions."

DOT, Appendix C, Components of the Definition Trailer, 1991 WL 688702 (4th ed. rev. 1991).[5]

Clearly, had the one to two step limitation been included in Plaintiff's RFC, there would

be an apparent conflict between the vocational expert's testimony and the DOT. *See Rounds v.*

*Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003–04 (9th Cir. 2015) (discussing this same conflict);

*see also Coleman v. Astrue*, No. 09-1338-SAC, 2010 WL 4942103, at *7 (D. Kan. Nov. 30, 2010)

(remand after failing to including limitation of one to two step instructions).[6] An "ALJ must

investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert

testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a

determination of nondisability." *MacDonald v. Berryhill*, No. 16-2594-SAC, 2018 WL 806221, at

*4 (D. Kan. Feb. 9, 2018) (quoting *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999)). If

the ALJ did not do so, it would result in reversible error. *Id.*

The court finds that the ALJ erred in his treatment of Dr. McMaster's opinion. This matter

must be remanded so that the ALJ may properly weigh Dr. McMaster's opinion in light of this

order and the record. Upon remand, the ALJ is free to reopen the hearing if necessary. The court

declines to review Plaintiff's argument regarding the weighing of her credibility as the ALJ may

---

[4] The government concedes that Plaintiff would not be able to perform the wire wrapping machine operator job as it requires a reasoning level of 3. (Doc. 12 at 10, n. 9.)

[5] The Commissioner objects to a determination that Plaintiff is limited to a GED reasoning level one job because "even a marginal education (sixth grade or less) equates to the reasoning ability needed for simple, unskilled types of jobs." (Doc. 12 at 10.) The ALJ, however, has determined that Plaintiff has severe mental impairments, including major neurocognitive disorder, which affects cognitive functioning. Any argument that the education Plaintiff received more than 30 years ago, and prior to her cognitive decline, would somehow overcome her severe mental impairments is not persuasive to this court.

[6] The court notes that Judge Crow has previously determined that jobs with a reasoning level of 2 also appear to conflict with a limitation of understanding, remembering and carrying out simple instructions. *See MacDonald v. Berryhill*, No. 16-2594-SAC, 2018 WL 806221, at *3–4 (D. Kan. Feb. 9, 2018) (remanding decision).

reconsider this argument in light of this order on remand.  If there are any apparent conflicts between the expert's testimony and the DOT, these must be resolved at a hearing.

**IV. Conclusion**

The Commissioner's decision is REVERSED AND REMANDED.  The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order.

The clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED this 26th day of February, 2020.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE